UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIA ROWENA ABRAHAM,** on behalf of herself and others similarly situated<br>  **Plaintiff** | : : : : : | Case Number |
| vs. | : : | |
| **SCHENKER, INC.,**<br>d/b/a DB SCHENKER<br>&<br>**AEROTEK, INC.**<br>&<br>**DATAQUEST**<br>  **Defendants** | : : : : : : : : : | **CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

On behalf of herself and all others similarly situated, Plaintiff Maria Rowena Abraham ("Plaintiff"), by and through her attorney, Vullings Law Group, LLC, respectfully alleges as follows:

## NATURE OF THIS ACTION

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), brought on behalf of applicants for employment with Defendant Schenker, Inc. ("Defendant Schenker") and employees of Defendant Aerotek, Inc. ("Defendant Aerotek"). Plaintiff contends that Defendants systematically violate section 1681b(b)(3) of the FCRA by using consumer reports to make adverse employment decisions without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA, leaving the person who is the subject of the report without any time, much less sufficient time, to dispute the report.

2.     The FCRA was enacted "to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. 15 U.S.C. § 1681(b). Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as Defendant Schenker and Defendant Aerotek. This action involves Defendants' systematic violations of several of those important rules.

3.     Plaintiff was denied employment as a screening specialist at Defendant Schenker, Inc., and Plaintiff was fired as an employee at Defendant Aerotek, based on a standardized background screen conducted by Defendant DataQuest ("Defendant DataQuest") pursuant to an agreement between Defendants Aerotek and Schenker, Inc. and Defendant DataQuest whereby Defendant DataQuest performs a standardized background screen on all of Defendant Schenker, Inc's candidates for hire and all of Defendant Aerotek's employees.

4.     In violation of the FCRA, Defendants Aerotek and Schenker, Inc. required Plaintiff to acknowledge a standardized disclosure and application form which, among other things, did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

5.     In further violation of the FCRA, Defendants Aerotek and Schenker, Inc. willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report they obtained from Defendant DataQuest, before the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, individuals who have applied to Defendant Schenker, Inc. for employment or have

been employed by Defendant Aerotek have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

6. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for herself and a class of similarly situated employment applicants and employees who were required to sign Defendants' job application disclosure form that violated section 1681b(b)(2) and to whom Defendants failed to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## PARTIES

7. Plaintiff is an adult individual residing in Mechanicsburg, Pennsylvania.

8. Upon information and belief, Defendant Aerotek is a company licensed to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania. Defendant Aerotek markets itself as a global leader in recruiting and staffing. Defendant Aerotek has a principal place of business at 2 Bala Plaza, Suite 400, Bala Cynwyd, Pennsylvania 19004.

9. Upon information and belief, Defendant Schenker, Inc. provides supply chain solutions, is licensed to do business in the Commonwealth of Pennsylvania, and regularly conducts business in the Eastern District of Pennsylvania. Defendant Schenker, Inc. has a principal place of business at 3501 Island Avenue, Philadelphia, Pennsylvania 19153.

10. Upon information and belief, Defendant DataQuest is and was a company engaged in the business of nationwide consumer reporting, is licensed to do business in the Commonwealth of Pennsylvania, and regularly conducts business in the Eastern District of Pennsylvania. Defendant DataQuest has a principal place of business at 901 Fifth Avenue, Suite 3500, Seattle, Washington 98164.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter based upon 28 U.S.C. §1331 and 15 U.S.C. §1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq.

12. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs claim occurred in this District.

## STATEMENT OF FACTS

**Background: Defendants Aerotek and Schenker, Inc.'s Use of Defendant DataQuest's Screening Activities**

13. Defendant DataQuest provides "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.

14. Defendant DataQuest assembles and/or maintains consumer files which contain information concerning, among other things, the alleged credit history of individuals.

15. From its files, Defendant DataQuest sells consumer reports to potential employers (such as Defendants Aerotek and Schenker, Inc.) wishing to investigate the credit history with regard to various job applicants or employees.

16. Defendant DataQuest offers its customers the possibility of using its service in a pre-employment-hiring environment, meaning as a preliminary screen of applicants, or in a "post-employment" hiring environment, meaning as the final stage in the hiring/promotion process. In a "post-employment" environment, Defendant DataQuest customers use the service to screen consumers who have already been selected for hire or promotion, subject to the results of the background screen.

17. Defendants Aerotek and Schenker, Inc's Human Resources Division both use Defendant DataQuest's screening services to conduct credit checks and drug tests on all applicants for employment and employees. Pursuant to Defendants Aerotek and Schenker, Inc's contract with Defendant DataQuest, the results of these services are delivered directly to Defendants Aerotek and Schenker, Inc.

18. Under the FCRA, a "user" of a consumer report, such as Defendants Aerotek and Schenker, Inc., who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, before taking the adverse action. 15 U.S.C. § 1681 b(b)(3)(A).

19. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

**The Facts Pertaining to Class Representative Plaintiff Maria Rowena Abraham**

20. Plaintiff Maria Rowena Abraham was employed with Defendant Aerotek as a temporary screening specialist within the office of Defendant Schenker, Inc.

21. Plaintiff Maria Rowena Abraham applied for permanent employment with Defendant Schenker, Inc. as a screening specialist on or about January 17, 2018.

22. Ms. Abraham was instructed that the position for which she was applying was a full-time position. Ms. Abraham was offered the job with Defendant Schenker, Inc., which she accepted.

23. In connection with the onboarding process with Defendant Schenker, Inc., and in connection with her continued employment with Defendant Aerotek, Ms. Abraham was required by said Defendants to acknowledge a standard authorization and disclosure form provided by said defendants by which she gave said defendants permission to solicit information about her background, including but not limited to information as to her employment and general public records history and to investigate all statements contained in this application, as well as additional sources as may be necessary, in arriving at an employment decision and to determine the eligibility for continued employment.

24. The above-referenced Disclosure Form that said Defendants required Ms. Abraham to acknowledge was not the "clear and conspicuous disclosure ... in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" as required by section 1681b(b)(2)(A)(i) of the FCRA.

25. Defendants Aerotek and Schenker, Inc. have pursued a blanket policy and practice designed to deprive employment applicants of their legal rights, which is an objectively unreasonable action. Such a policy is evidence of willfulness. *Seamans v. Temple University*, 744 F.3d 853, 868 (3d Cir. 2014).

26. Defendants knew or should have known that their policies were a violation of the FCRA because the statutory language of section 1681b(b)(2)(A) was pellucidly clear that Defendants could not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless a clear and conspicuous disclosure has

been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes. 15 U.S.C. § 1681b(b)(2)(A)(i).

27. According to the Merriam-Webster online dictionary, the word "solely" is defined as "without another" and "to the exclusion of all else." See http://www.merriam-webster.com/dictionary/solely. According to dictionary.com, "solely" means "exclusively or only." See http://dictionary.reference.com/browse/solely. These dictionary definitions of the word "solely" leave no doubt that a document disclosing that an employer planned to obtain a consumer report does not "consist[] solely of the disclosure."

28. Any Disclosure Form that Defendants allegedly provided to Ms. Abraham violated section 1681b(b)(2) of the FCRA because it did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). See *Avila v. NOW Health Group, Inc.*, 2014 WL 3537825, *2-3 (N.D. Ill. July 17, 2014).

29. In addition to signing the Disclosure Form, Plaintiff completed an application in which she truthfully answered the questions presented.

30. Upon information and belief, Defendant Schenker, Inc. referred information regarding Ms. Abraham's application to the Human Resources Division of both Defendants Schenker, Inc. and Aerotek, which each requested Defendant DataQuest to conduct a credit check and drug test on Ms. Abraham, and provide the results, to Defendants Schenker, Inc. and Aerotek.

31. It is believed and therefore averred that Defendants Schenker, Inc. and Aerotek received a background report from Defendant DataQuest concerning Ms. Abraham which indicated that Ms. Abraham's social security number was unable to be validated.

32. Defendants Schenker, Inc. and Aerotek reviewed the Defendant DataQuest background report, and determined that the information contained in the report disqualified Ms. Abraham from employment with Defendant Schenker, Inc., and from continued employment with Defendant Aerotek.

33. On or about February 16, 2018, Defendants Schenker, Inc. and Aerotek informed Plaintiff that they had "bad news," that they "found something" in Plaintiff's background check, and that Plaintiff was both fired by Defendant Aerotek and would not be hired by Defendant Schenker, Inc.

34. Ms. Abraham informed Defendants Schenker, Inc. and Aerotek that the background check, which she had not yet received a copy of, contained inaccurate information because her social security number was indeed valid and was issued in February 2013.

35. On or after February 19, 2018, Defendant DataQuest, on behalf of Defendants Schenker, Inc. and Aerotek, sent a letter to Ms. Abraham that was inaccurately entitled "Pre-Adverse Action Notice."

36. Thus, at the time that the letter was sent, as well as the time it had been received by Ms. Abraham, the job offer which Defendant Schenker, Inc. had made to Ms. Abraham, as well as Ms. Abraham's employment with Defendant Aerotek, both of which she had accepted, had been revoked based upon the consumer report that Defendants Schenker, Inc. and Aerotek had obtained from Defendant DataQuest, prior to her being notified of the fact, and being provided with a copy of the report, as well as a meaningful opportunity to dispute it. In doing so, Defendants failed to comply with the FCRA's pre-adverse action notification requirements.

37. The letter's purported opportunity to dispute the accuracy of this information was not a real opportunity to provide information because the decision not to hire Ms. Abraham, as

well as the action to fire Ms. Abraham, had already been made. Instead, it was a mere formality designed to somehow satisfy section 1681b(b)(3)'s requirement of a pre-adverse action notice.

38. The FCRA does not permit an employer to satisfy section 1681b(b)(3) by formally designating some future point in time as the moment of a final decision if, as in this case, the adverse decision already has been made.

39. The Report provided by Defendant DataQuest to Defendants Schenker, Inc. and Aerotek reported that Ms. Abraham's social security number was not able to be validated.

40. The above-referenced information as to her social security number is inaccurate.

41. As a direct result of Defendants' unlawful use of the Defendant DataQuest background report, Ms. Abraham lost the job opportunity at Defendant Schenker, Inc., and was fired from her temporary position with Defendant Aerotek.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

(a) All natural persons residing within the United States and its territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the Defendants procured or caused to be procured a consumer report for employment purposes using a written disclosure that violated the FCRA wherein the statutory language of section 1681b(b)(2) is required.

(b) All applicants for employment with Defendant Schenker, Inc. or any subsidiary thereof residing in the United States who were the subject of a background report obtained from Defendant DataQuest that was used by Defendant Schenker, Inc.

and/or its subsidiaries to make an adverse employment decision regarding such applicant for employment, within two years prior to the filing of this action and extending through the resolution of this case, and for whom Defendant Schenker, Inc. and/or its subsidiaries failed to provide the applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

(c) All employees with Defendant Aerotek and/or Defendant Schenker, Inc. or any subsidiary thereof residing in the United States who were the subject of a background report obtained from Defendant DataQuest that was used by Defendant Aerotek and/or its subsidiaries to make an adverse employment decision regarding continued employment, within two years prior to the filing of this action and extending through the resolution of this case, and for whom Defendant Aerotek and/or its subsidiaries failed to provide the applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

43. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

44. Numerosity. FED. R. Civ. P. 23(a)(1). The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants obtain signed standardized form authorizations for background reports and procure and use hundreds if not thousands of consumer reports on applicants for employment and/or employees each year, and those persons' names and addresses are identifiable through documents maintained by Defendants.

45. Existence and Predominance of Common Questions of Law and Fact. FED. R. CiV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class, and

predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

    (a)    Whether Defendants willfully or negligently violated section 1681b(b)(2) of the FCRA by procuring or causing to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes;

    (b)    Whether Defendants failed to provide each applicant for employment a copy of their consumer report at least five business days before Defendants took adverse action based upon the consumer report;

    (c)    Whether Defendants failed to provide each applicant for employment a copy of their written notice of FCRA rights at least five business days before Defendants took adverse action based upon the consumer report.

46. Typicality. FED. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for absent class members.

47. Adequacy. FED. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

48. Predominance and Superiority. FED. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the

controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2)
### (Plaintiff & Class v. Schenker, Inc. & Aerotek)

49. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

50. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

51. The Defendant DataQuest background reports ordered by Defendants Aerotek and Schenker, Inc. are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

52. Defendants are liable for willfully or negligently violating section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document

that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

## COUNT II
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
### (Plaintiff & Class v. Schenker, Inc. & Aerotek)

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

54. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681 a(c).

55. The Defendant DataQuest background reports ordered by Defendants Schenker, Inc. and Aerotek are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

56. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report and a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

57. For purposes of this requirement, an "adverse action" includes "any … decision ... that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

58. Defendants Aerotek and Schenker, Inc. are each a "person" that regularly uses Defendant DataQuest background reports for employment purposes.

59. The FCRA requires Defendants, as users of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

60. Defendants willfully or negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Class the following before using such reports:

    (a)    the required Pre-Adverse Action Notice;

    (b)    a copy of the consumer report; and,

    (c)    a written description of the consumer's rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute the report before Defendants took adverse action on their employment or promotion applications or employment.

## COUNT III
### Defamation of Character
**(Plaintiff & Class v. DataQuest)**

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

62. Defendant DataQuest has published inaccurate information through writing to various employers and potential employers regarding Plaintiffs' credit history.

63. Defendant DataQuest has published the inaccurate information each time a credit report on the Plaintiffs has been requested from any employer or potential employer.

64. The inaccurate information published by Defendant DataQuest is false in that it inaccurately reflects Plaintiff's credit information, and paints Plaintiff in a suspicious light.

65. Defendant DataQuest has published the inaccurate information to at least every single employer and potential employer that has requested Plaintiff's credit report.

66. The falsehoods within such reports constitute falsehoods concerning Plaintiff.

67. Defendant DataQuest knew or reasonably should have known that the information regarding the Plaintiffs which they have published and re-published is incorrect and false.

68. Defendant DataQuest continues to publish the false and negative information as to Plaintiffs up through the present time.

69. Defendant DataQuest knew that the information as to Plaintiffs credit report was false and had no factual basis. Defendant DataQuest nonetheless continued to publish and re-publish the inaccurate information.

70. The publications of the information as to Plaintiffs constitutes libel per se.

71. In addition, Defendant DataQuest has acted with malice by failing to communicate accurate information to all employers and potential employers to whom said Defendant DataQuest provides information concerning the Plaintiffs.

72. The conduct of Defendant DataQuest was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to the Plaintiffs that are outlined more fully above and, as a result, said Defendant DataQuest is liable to compensate the Plaintiffs for the full amount of actual damages, compensatory damages and punitive damages, as well as such other relief, permitted under the law.

## COUNT IV
### Breach of Common Law Fiduciary Duties
### (Plaintiff & Class v. DataQuest)

73. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

74. Plaintiffs and all members of the Class are entitled to surcharge in equity compelling Defendant DataQuest to disgorge all profit it realized from furnishing untrue information about Plaintiffs to Plaintiffs' employers and potential employers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A.      An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.      An award of actual, statutory and punitive damages for Plaintiff and the Classes;

C.      An award of pre-judgment and post-judgment interest as provided by law;

D.      An award of attorneys' fees and costs; and,

E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 16, 2018

                                        VULLINGS LAW GROUP, LLC

                                By:     */s/ Brent F. Vullings*
                                        Brent F. Vullings, Esq.
                                        3953 Ridge Pike Suite 102
                                        Collegeville, PA 19426
                                        Tel: (610) 489-6060
                                        Fax: (610) 489-1997
                                        *Attorney for Plaintiff and the Class*